**STEWART A. KAUFMAN, M.D.,**

      **Plaintiff,**

vs.               1:11-CV-667
                  (MAD/CFH)

**THE COLUMBIA MEMORIAL HOSPITAL, d/b/a
COLUMBIA MEMORIAL HOSPITAL,**

      **Defendant.**
_____

| APPEARANCES: | OF COUNSEL: |
|---|---|
| **GLEASON, DUNN, WALSH & O'SHEA**<br>40 Beaver Street<br>Albany, New York 1207<br>Attorneys for Plaintiff | **RONALD G. DUNN, ESQ.**<br>**PETER N. SINCLAIR, ESQ.** |
| **GARFUNKEL WILD, P.C.**<br>111 Great Neck Road<br>Great Neck, New York 11201<br>Attorneys for Defendant | **ANDREW L. ZERLING, ESQ.**<br>**JASON HSI, ESQ.** |

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

## I. INTRODUCTION

   Plaintiff Stewart A. Kaufman commenced this action on June 13, 2011, alleging that he had been discriminated against based on his age in violation of the Age Discrimination and Employment Act of 1967, 29 U.S.C. §§ 621- 634 ("ADEA") and N.Y. Exec. Law § 296 ("New York State Human Rights Law" or "NYSHRL"), and based on his disability in violation of the Americans with Disabilities Act, ("ADA"), codified at 42 U.S.C. § 12101 *et seq.* and the NYSHRL. Plaintiff also pled a claim for breach of contract, and defendants counterclaimed for unjust enrichment. Following discovery, defendants moved for summary judgement on each of

Plaintiff's claims, and on the unjust enrichment counterclaim. *See* Dkt. No. 40. In a February 19, 2014, Memorandum-Decision and Order, this Court granted in part and denied in part defendants' motion for summary judgment. *See* Dkt. No. 52 ("February 19 Order"). The February 19 Order dismissed Plaintiff's age and disability discrimination claims and Plaintiff's claims against defendants Jay Cahalan and Norman A. Chapin.[1] As set forth in the February 19 Order, the Court found triable issues of fact with respect to Plaintiff's breach of contract claim and Defendant Columbia Memorial Hospital's ("CMH") unjust enrichment counterclaim. Trial on these remaining claims is set for August 11, 2014.[2] Presently before the Court are Plaintiff's and Defendant CMH's respective motions for reconsideration of the February 19 Order. *See* Dkt. Nos. 57, 58. For the reasons stated herein, those motions are denied.

## II. BACKGROUND

The Court assumes the parties' familiarity with the background of this case, as detailed in the February 19 Order, and will discuss only those allegations and facts relevant to disposition of the pending motions.

## III. DISCUSSION

---

[1] The Court has revised the caption to reflect the dismissal of the individual defendants.

[2] Although the issue has not been raised by the parties, the Court notes that it is within the Court's discretion to decline to exercise supplemental jurisdiction over the remaining state law claims, since all of the federal claims have been dismissed. *See Carlsbad Technology, Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) ("A district court's decision whether to exercise . . . jurisdiction [over state law claims] after dismissing every claim over which it had original jurisdiction is purely discretionary."); *see also Chenensky v. New York Life Ins. Co.*, 942 F. Supp. 2d 388, 391 (S.D.N.Y. 2013) ("District courts weigh several factors in determining whether to exercise supplemental jurisdiction, including 'the values of judicial economy, convenience, fairness and comity.'") (citation omitted). In light of the length of time this matter has been pending before the Court, the proximity to trial, and the extensive discovery and motion practice in which the parties have engaged, the Court will exercise supplemental jurisdiction over the remaining state law claims. *See Vysovsky v. Glassman*, No. 01 Civ. 2531, 2007 WL 3130562, *5-6 (S.D.N.Y. Oct. 23, 2007).

2

**A.     Standard**

Rule 60(b) provides that, upon a motion and just terms, the court may relieve a party from a final judgment, order or proceeding for the following reasons:

> (1) mistake, inadvertence, surprise, or excusable neglect;
> (2) newly discovered evidence . . . ;
> (3) fraud . . . , misrepresentation, or other misconduct of an adverse party;
> (4) the judgment is void;
> (5) the judgment has been satisfied, released, or discharged; . . . or
> (6) any other reason justifying relief from the operation of the judgment.

Fed. R. Civ. P. 60(b).

"[A] motion to reconsider should not be granted where the moving party seeks solely to relitigate an issue already decided." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). Relief under Rule 60 is considered "extraordinary judicial relief[.]" *Nemaizer v. Baker*, 793 F.2d 58, 61 (2d Cir. 1986). For that reason, the motion will generally be denied unless the moving party can show that the court overlooked facts or controlling law that "might reasonably be expected to alter the conclusion reached by the court." *Shrader*, 70 F.3d at 257 (citations omitted). Generally, "[a] court may justifiably reconsider its previous ruling if: (1) there is an intervening change in controlling law; (2) new evidence not previously available comes to light; or (3) it becomes necessary to remedy a clear error of law or to prevent manifest injustice." *Delaney v. Selsky*, 899 F. Supp. 923, 925 (N.D.N.Y. 1995). Motions to vacate or to reconsider should not be granted if a moving party seeks only to relitigate an issue that has already been fully considered by the court. *Shrader*, 70 F.3d at 257. The Second Circuit has warned that a Rule 60 motion may not be used as a substitute for appeal and that a claim based on legal error alone is inadequate. *United Airlines, Inc. v. Brien*, 588 F.3d 158, 176 (2d Cir. 2009).

A party may only move for reconsideration of an order pursuant to Rule 60(b) if that order is final. *See Indem. Ins. Co. of N. Am. v. Reisley*, 153 F.2d 296, 299 (2d Cir. 1946). An order that "adjudicate[s] fewer than all the claims or the rights and liabilities of fewer than all the parities," is not a final order. *Frazier v. Turning Stone Casino*, No. 02-131, 2005 WL 2033483, *1 (N.D.N.Y. Aug. 16, 2005). Rule 60 does not apply to the instant motions because the order in question is not a final one as it partially denied the motion for summary judgement. *See Floyd v. City of New York*, 813 F. Supp. 2d 457 (S.D.N.Y.) (noting that because order granted in part and denied in part defendants' motion for summary judgment "it was not appealable and thus not final for the purposes of Rule 60(b)"). Rather, the instant motions for reconsideration are governed by Rule 54(b) and Local Rule 7.1(g).

Rule 54(b) provides in relevant part:

> [A]ny order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

Fed. R. Civ. P. 54(b). Motions under Rule 54(b) are subject to the law-of-the-case doctrine. *In re Rezulin Liability Litigation*, 224 F.R.D. 346, 349 (S.D.N.Y. 2004). This means that the decisions referenced in Rule 54(b) "may not usually be changed unless there is 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent a manifest injustice.'" *Official Comm. of Unsecured Creditors of the Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 167 (2d Cir. 2003) (citing *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992)). This allows for decisions to be revisited, "subject to the caveat that 'where litigants have once battled for the court's decision, they should

4

neither be required, nor without good reason permitted, to battle for it again."' *Id.* (citing *Zdanok v. Glidden Co.*, 327 F.2d 944, 953 (2d Cir.1964)).

The objective of the law-of-the-case doctrine "include[s] promoting efficiency and avoiding endless litigation by allowing 'each stage of the litigation [to] build on the last and not afford an opportunity to reargue every previous ruling."' *In re Rezulin Liability Litigation*, 224 F.R.D. at 349-50 (quoting *Tri-Star Pictures, Inc. v. Leisure Time Prod., B.V.*, No. 88-9127, 1992 WL 296314, *2 (S.D.N.Y. Oct. 6, 1992) (citation omitted)). Therefore, without "cogent or compelling" reasons to depart from a prior order, "a court will 'generally adhere to [its] own earlier decision on a given issue in the same litigation."' *Id.* at 350 (quoting *Tri-Star Pictures, Inc.*, 1992 WL 296314, at *2 (citations omitted)).

Local Rule 7.1(g) provides as follows, in pertinent part:

> Motion for Reconsideration. Unless Fed. R. Civ. P. 60 otherwise governs, a party may file and serve a motion for reconsideration or reargument no later than FOURTEEN DAYS after the entry of the challenged judgment, order, or decree.

N.D.N.Y. L.R. 7.1(g).[3]

The standards for motions for reconsideration under local district court rules are very similar to those used for motions to reconsider under Rule 60(b). *See McAnaney v. Astoria Fin. Corp.*, No. 04-1101, 2008 WL 222524, *3 (E.D.N.Y. Jan. 25, 2008) (discussing standards). "'In order to prevail on a motion for reconsideration, the movant must satisfy stringent requirements."' *Id.* (quoting *C-TC 9th Ave. P'ship v. Norton Co.*, 182 B.R. 1, 2 (N.D.N.Y. 1995)). A motion for reconsideration "will generally be denied unless the moving party can point to controlling

---

[3] Following entry of the February 19 Order, counsel for CMH notified the Court of its intention to seek reconsideration. During a pretrial conference on March 5, 2014, the Court set a briefing schedule on any motions to reconsider, which superseded the deadline set forth in the Local Rules. Accordingly, the motions are timely.

5

decisions or data that the court overlooked – matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader*, 70 F.3d at 257. As under the federal rules, the local rule "recognizes only three possible grounds upon which motions for reconsideration may be granted; they are (1) an intervening change in controlling law, (2) the availability of new evidence not previously available, or (3) the need to correct a clear error of law or prevent manifest injustice." *Maye v. New York*, No. 10-1260, 2011 WL 4566290, *2 (quoting *In re C-TC 9th Ave. P'ship*, 182 B.R. at 3). A motion for reconsideration is not "an opportunity for a losing party to advance new arguments to supplant those that failed in the prior briefing of the issue." *Drapkin v. Mafco Consol. Group*, 818 F. Supp. 2d. 678, 697 (S.D.N.Y. 2011) (quotation and citations omitted).

Plaintiff asserts that an intervening change in controlling law warrants reconsideration of the February 19 Order with respect to his NYHRL disability discrimination claim. Plaintiff also contends that the Court overlooked certain material facts that prove that CMH's non-discriminatory justifications were merely pretextual, and thus, reconsideration is appropriate to prevent manifest injustice. Defendant CMH does not assert an intervening change in controlling law or the existence of new evidence not previously available. Thus, in resolving CMH's motion for reconsideration, the Court will determine whether the February 19 Order should be altered in order to correct a clear error of law or prevent manifest injustice.

**B.     Plaintiff's Motion for Reconsideration**

Plaintiff's primary argument in support of his motion for reconsideration is that the New York State Court of Appeals' decision in *Jacobsen v. New York City Health and Hospitals Corp.*, — N.Y.3d — , 2014 N.Y. Slip Op. 02098, 2014 WL 1237421 (Mar. 27, 2014), represents an intervening change in controlling law. Although this aspect of Plaintiff's motion has some merit

6

in that it identifies a decision issued after the February 19 Order by New York State's highest court on a question of state law, it nevertheless fails to satisfy the stringent requirements necessary to prevail on a motion for reconsideration. In *Jacobsen*, the Court of Appeals, *inter alia*, stated as follows:

> In light of the importance of the employer's consideration of the employee's proposed accommodation, the employer normally cannot obtain summary judgment on a State HRL claim unless the record demonstrates that there is no triable issue of fact as to whether the employer duly considered the requested accommodation. And, the employer cannot present such a record if the employer has not engaged in interactions with the employee revealing at least some deliberation upon the viability of the employee's request. Consequently, to prevail on a summary judgment motion with respect to a State HRL claim, the employer must show that it "engage[d] in a good faith interactive process that assesse[d] the needs of the disabled individual and the reasonableness of the accommodation requested[.]"

2014 WL 1237421 (citations omitted). Here, Plaintiff notes that he has consistently argued that defendants refused to engage in the interactive process or consider a reasonable accommodation of monitoring. *See* Dkt. No. 57-2 at 7.[4] Plaintiff also notes that in the February 19 Order, this Court stated that "it appears that Plaintiff's requests [for a reasonable accommodation] were never seriously considered by CMH." *Id.* at 8 (citing February 19 Order at 18). As such, Plaintiff argues that the Court must "deny defendants' motion for summary judgment with respect to Plaintiff's disability causes of action." *Id.* at 8.

As an initial matter, this aspect of Plaintiff's motion for reconsideration is limited to the Court's determination with respect to the NYHRL disability discrimination claim only. In his motion for reconsideration, Plaintiff intimates that *Jacobsen* dictates the denial of summary judgment on all of Plaintiff's disability discrimination claims. However, the Court of Appeals'

---

[4] To avoid confusion, anytime the Court references a specific page number for an entry on the docket, it will cite to the page number assigned by the Court's electronic filing system.

decision in *Jacobsen* did not, because it could not, address federal disability discrimination claims. As such, there is no intervening change in controlling law with respect to Plaintiff's ADA claim.

With regard to the NYHRL claim, Plaintiff's argument overlooks several important aspects of the February 19 Order and the Court of Appeals' decision in *Jacobsen*. The February 19 Order found that questions of material fact existed with respect to whether Plaintiff was qualified to perform the essential functions of his job, either with or without reasonable accommodation, and whether his requested accommodation was reasonable or would impose undue hardship:

> [T]he Court notes that neither Defendants nor Plaintiff have presented evidence or argument regarding what the essential functions of Plaintiff's job were as an orthopedic surgeon [at] CMH. Thus, it is impossible for the Court to determine whether Plaintiff could perform those functions, with or without reasonable accommodation. Nevertheless, the Court is persuaded that a substantial question of fact exists regarding whether Plaintiff was otherwise qualified. Most importantly, the Court notes (as Defendants have pointed out) that Plaintiff continued to perform independent medical examinations following his termination by CMH through his private practice.
>
> In addition, there is evidence in the record that Plaintiff repeatedly requested the accommodation, as recommended by Dr. Nelson, of having his practice monitored. While Defendants argue that such an accommodation would not have been reasonable under the circumstances, it appears that Plaintiff's requests were never seriously considered by CMH and, in any event, whether such accommodations were reasonable or would impose undue hardship on CMH is a question for a jury to decide.

February 19 Order at 18. Thus, unlike the trial court in *Jacobsen*, this Court did not award summary judgment to defendants on the basis that "no reasonable accommodation was available for plaintiff." 2014 WL 1237421. Here, the Court awarded summary judgment to defendants because Plaintiff failed to satisfy his burden to introduce sufficient evidence showing that he was

8

terminated under circumstances giving rise to an inference of discriminatory intent. Specifically, the Court found Plaintiff's assertions in this regard to be conclusory and unsubstantiated. As such, the Court concluded that Plaintiff had failed to meet his burden of proof on causation and, therefore, that Plaintiff had not demonstrated a prima facie case of disability discrimination. *See* February 19 Order at 19-20.

In *Jacobsen*, the issue of causation was not before the Court of Appeals. The Court of Appeals did, however, address the interplay between the role the interactive process plays in determining whether a reasonable accommodation exists and whether an employer's refusal to engage in such a process can establish causation:

> In *Parker v. Columbia Pictures Industr.* (204 F3d at 326), the United States Court of Appeals for the Second Circuit interpreted the federal Americans with Disabilities Act (ADA) and found that an employer's failure to participate in an interactive process designed to determine the viability of an employee's proposed accommodation constituted an element of causation insofar as it revealed that the employer had discriminated intentionally against the employee "because of" the employee's disability (*Parker*, 204 F.3d at 338). Subsequently, however, the Second Circuit and most other federal courts have held the interactive process to be a means of determining the availability of a reasonable accommodation rather than an overall sign of the discriminatory basis of an adverse employment action (*see McBride v. BIC Computer Products Mfg. Co.*, 583 F.3d 92, 100 [2d Cir2009] [summarizing cases describing the interactive process as part of the reasonable accommodation determination]). *In our view, the employer's failure to hold a constructive dialogue about the possibility of a reasonable accommodation may indicate that the employer has discriminated "because of" an individual's disability within the meaning of the State HRL (Executive Law § 296[1][a]) and the City HRL (Administrative Code of the City of N.Y. § 8–107[1][a]) in some cases. However, under both statutes, the lack of an interactive process is relevant primarily to the issue of whether a reasonable accommodation was available for the employee's disability and does not substantially impact the court's or the fact finder's determination of causation.*

2014 WL 1237421 n.2 (emphasis added).

Thus, while in certain circumstances an employer's failure to hold a constructive dialogue on reasonable accommodation "may indicate" discriminatory intent, the circumstances here do not give rise to such an inference. First, the nature of Plaintiff's requested accommodation did not suggest the need for an ongoing dialogue. Plaintiff made a specific request for an accommodation – supervision of his practice by another orthopedist. Defendants deemed this request to be unreasonable and rejected it. This is distinguishable from other circumstances where an employee makes a generalized request for an accommodation and an employer can consider and respond to such request with further questions or its own proposals. *See McBride v. BIC Consumer Prods. Mfg. Co., Inc.*, 583 F.3d 92, 102 (2d Cir. 2009) (discussing *Brady v. Wal-Mart Stores, Inc.*, 531 F.3d 127 (2d Cir. 2008), which "indicated that, in the absence of a request for specific accommodation, an employer should engage in an interactive process to discover an accommodation workable to both parties"). It is in those circumstances where an employer's refusal to engage in a dialogue with the employee could conceivably give rise to an inference of discriminatory intent.

Second, the accommodation requested by Plaintiff here was not uncomplicated or burdenless to Defendant CMH. Although the February 19 Order found that Plaintiff had raised a triable issue of fact as to the ultimate reasonableness of the accommodation request, this inquiry is distinct from the inquiry into whether a defendant's refusal to engage in a dialogue indicates discriminatory animus. With respect to the latter inquiry, the Court must focus on whether Defendant CMH's failure to "seriously consider[]" Plaintiff's accommodation request suggests that it terminated Plaintiff *because of* his disability. Here, Defendant has asserted several plausibly legitimate reasons for its determination that

> monitoring was not reasonable under the circumstances, . . . because of a potential conflict with a physician assistant,

10

> controversy before the Hospital's Board, and since Plaintiff was already drawing a significant salary, another physician shadowing Plaintiff as it a second-year resident would have placed an undue burden on the Hospital. And, even if Plaintiff had arranged for monitoring himself, Plaintiff concedes that it would not have included monitoring during his surgeries, which was the most critical area of patient safety concern.

Dkt. No. 49 at 12 (citations omitted); *see also* Dkt. No. 40-2 at ¶¶ 86-92. In light of the explanations interposed by Defendant CMH for rejecting Plaintiff's requested accommodation and under the circumstances presented here, the lack of meaningful dialogue is not probative of discriminatory intent.

Finally, Defendant CMH's failure to engage in an interactive process with respect to Plaintiff's accommodation request does not substantially impact the Court's causation determination because there are no other meaningful indicia of discriminatory intent. As discussed in the February 19 Order, Plaintiff failed to muster sufficient evidence and argument to demonstrate discriminatory intent. Were this a closer call with respect to causation – for example, if Plaintiff had identified a similarly situated, non-disabled physician who had been treated differently than he – then perhaps the absence of a meaningful reasonable accommodation dialogue would be material to a determination of causation. In the absence of any such evidence, however, this Court agrees with Court of Appeals, in that "the lack of an interactive process is relevant primarily to the issue of whether a reasonable accommodation was available for the employee's disability." *Jacobsen*, 2014 WL 1237421.

Plaintiff also "respectfully asserts that this Court may have overlooked certain material facts in rendering its holding regarding lack of causation." Dkt. No. 57-2 at 8. Specifically, Plaintiff notes that the defendants did not report Plaintiff's unfitness to practice medicine to state authorities, as required under state law. Although not specifically addressed in the February 19

Order, this argument was raised by Plaintiff in his opposition to the motion for summary judgment and considered by the Court. The Court has carefully reviewed the facts set forth in Plaintiff's motion for reconsideration regarding this argument and finds that it would not change the Court's analysis. "[D]isagreement with the court's ruling or legal judgment is not a basis for reconsideration." *Johnson v. Toffey*, No. 01-1907, 2011 WL 3841540, *3 (N.D.N.Y. Aug. 24, 2011) (citing *Concerned Citizens of Chappaqua v. U.S. Dep't of Transp.*, No. 08-7325, 2009 WL 1158966, *2 (S.D.N.Y. Jan. 13, 2009). Rather, this is an attempt "to relitigate an issue already decided," *Shrader*, 70 F.3d at 257, and is not proper basis upon which to grant a motion for reconsideration. Accordingly, Plaintiff's motion for reconsideration is denied.

**C.    Defendant CMH's Motion for Reconsideration**

Defendant CMH seeks reconsideration of that aspect of the February 19 Order which denied its motion for summary judgement on Plaintiff's breach of contract claim. *See* Dkt. No. 58. CMH argues that the Court erred in rejecting "Defendants' contention that New York does not recognize hospital by-laws as a contract for breach of which a doctor may sue, . . ." Dkt. No. 58-1 at 7. CMH contends that pursuant to the plain language of the agreement between it and Plaintiff, Plaintiff had no right to a medical staff hearing concerning his privileges, since his hospital privileges terminated concurrently with the termination of his employment. CMH also contends that, absent clear language in the contract that mandates Plaintiff be afforded such a hearing prior to termination of his hospital privileges, there can be no breach of contract under the circumstances present here. Finally, CMH contends that there are no questions of fact necessitating a trial on Plaintiff's breach of contract claim and, in any event, a trial would run afoul of the doctrine of primary jurisdiction.

As an initial matter, the Court notes that each of CMH's arguments fall into one of three categories: arguments already raised and rejected in defendants' motion for summary judgment; new arguments not raised in defendants' motion for summary judgment; and arguments regarding issues of fact that must be resolved at trial. None of these categories of argument constitute an appropriate basis for seeking reconsideration. For this reason alone, the Court is entitled to deny CMH's motion. Nevertheless, the Court will address CMH's arguments below.

CMH's motion is predicated on a misapprehension of the procedural posture of this case and the scope of the February 19 Order. At no time has this Court been asked to rule on whether CMH terminated Plaintiff for "just cause," pursuant to the terms of the Employment Agreement. Despite CMH's assertions to the contrary, the February 19 Order did not determine that CMH had a legitimate basis to terminate Plaintiff for the purposes of his breach of contract claim. Rather, defendants' motion for summary judgment on Plaintiff's breach of contract claim was limited exclusively to the issue of whether CMH's failure to provide Plaintiff with a hearing, as required under the bylaws, constituted a breach. CMH is correct that the Court dismissed Plaintiff's discrimination claims based upon the finding that Plaintiff failed to establish a prima facie case of disability discrimination and failed to rebut defendants' asserted legitimate, non-discriminatory basis for his dismissal in response to his claim of age discrimination. The Court did not find – because it was not asked to so find – that CMH's dismissal of Plaintiff did not constitute a breach of the Employment Agreement. As such, this claim is to be resolved at trial.

In light of this clarification, CMH's arguments are unpersuasive. CMH asserts that it was entitled to terminate Plaintiff's hospital privileges concurrently with the termination of the Employment Agreement. As discussed above, however, whether CMH's termination of the Employment Agreement was proper is an unresolved question. Therefore, CMH cannot rely on

13

that event as the justification for its alleged denial of a hearing prior to termination of Plaintiff's hospital privileges, as required under the bylaws.

CMH cites to several cases decided under New York State law in support of its assertion that Plaintiff had no right to a fair hearing to assess the propriety of the termination of his hospital privileges. Each of these cases is factually distinguishable from the issues presented here, primarily for the reason that in none of those cases did the plaintiff-doctor allege a breach of contract for termination of an employment agreement between the plaintiff-doctor and the defendant-hospital. In *Sandhu v. Mercy Med. Ctr.*, 35 A.D.3d 479 (2d Dept. 2006), the plaintiff-doctor had an employment agreement with a professional corporation that, in turn, had an agreement with the defendant-hospital for the provision of emergency room physicians at the hospital. The plaintiff-doctor's employment agreement with the professional corporation provided that his hospital privileges would be deemed resigned in the event of his termination by the professional corporation. Following his termination by the professional corporation, the plaintiff did not challenge the termination of his employment, or seek reinstatement of his privileges. Rather, his claim for breach of contract was based upon the hospital's denial of a fair hearing. Recognizing that it must first determine whether the provision in the plaintiff's employment agreement providing for automatic resignation of hospital privileges upon termination was valid before reaching the fair hearing issue, the court found the disputed provision to be enforceable and dismissed the action.

In *Del Castillo v. Bayley Seton Hosp.*, 172 A.D.2d 796 (2d Dept. 1991), the plaintiff-doctor did not have an employment agreement with the defendant-hospital; instead, his co-plaintiff professional corporation did. As such, the court found that he lacked standing to bring a claim for breach of contract against the hospital. With respect to his hospital privileges, since the

hospital had declined to renew its agreement with the co-plaintiff professional corporation, the court found that the hospital's termination of the plaintiff-doctor's "privileges was pursuant to the terms of the agreement." *Id.* at 797. Accordingly, the plaintiff-doctor had no independent cause of action for improper termination of his hospital privileges.

In *Lobel v. Maimonides Med. Ctr.*, 39 A.D.3d 275 (1st Dept. 2007), the court found that the plaintiff-doctor did not have an employment agreement setting forth a fixed duration for continued employment at time of her termination and was, therefore, an at will employee. As such, she could not bring a claim for wrongful termination. Likewise, without an employment agreement and the concomitant contractual rights attached to her hospital privileges, the plaintiff was limited to the remedies provided in Section 2801 of the New York Public Health law and could not maintain a common law action for damages.

The remaining cases relied upon by CMH are similarly distinguishable. *See, e.g.*, *Falk v. Anesthesia Assocs. of Jamaica*, 228 A.D.2d 326 (1st Dept. 1996) (noting that "medical staff by-laws may form the basis of a claim for breach of contract" but holding that dismissal of common law wrongful termination of hospital privileges causes of action was proper where the plaintiff did not have an employment agreement with hospital and the plaintiff's only damages were caused by the termination of hospital privileges and not any breach of contract). None of the cases cited by CMH presents the Court with a compelling argument that reconsideration would be appropriate to correct a clear error of law or prevent manifest injustice. As stated in the February 19 Order,

> the Employment Agreement explicitly incorporates the Medical Staff By-Laws by reference. More specifically, Section 11(b)(ii), one of the sections pursuant to which Plaintiff was terminated, provides that the Employment Agreement may be terminated as a result of: "[a] termination, suspension or non-renewal of your medical staff privileges at the Hospital in accordance with the

15

> medical staff bylaws, rules and regulations and policies of the
> Hospital." Employment Agreement § 11. Moreover, the
> Employment Agreement required Plaintiff to abide by the bylaws:
> "[a]s a condition of your employment hereunder, you agree at all
> times to comply with the bylaws, rules and regulations of the
> Hospital and its Medical Staff." *Id.* § 13. Thus, the bylaws were
> incorporated by reference into Plaintiff's Employment Agreement.

February 19 Order at 24. Since the bylaws were part of Plaintiff's Employment Agreement, CMH was bound by their provisions. The bylaws provide for a due process procedure when hospital privileges are terminated. Defendants adduced no evidence that they adhered to the requirements of the bylaws, and this aspect of the motion for summary judgment was therefore properly denied.

CMH's remaining arguments are equally unavailing. CMH contends that pursuant to the bylaws, "there is no right to a fair hearing in the absence of an adverse recommendation by the Hospital's Medical Executive Committee in response to a renewal application." Dkt. No. 58-1 at 16. This argument was not raised by defendants in the original motion for summary judgment, and the Court will not address it here. It is well settled that a party may not use a motion for reconsideration to raise new arguments for the first time when they were free to raise them during the original briefing. *See Indradjaja v. Holder*, 737 F.3d 212, 218 (2d Cir. 2013) ("a motion to reconsider based on a legal argument that could have been raised earlier in the proceedings, but was not, will be denied") (citation omitted). Similarly, CMH argues that the factual record establishes that Plaintiff failed to reapply to renew his hospital privileges, and thus, Plaintiff was not entitled to a hearing. Contrary to CMH's assertion, the circumstances regarding Plaintiff's application for renewal of his hospital privileges are contested and will be resolved at trial.

Finally, CMH contends that "there are no factual issues relating to the breach of contract claim requiring a trial." Dkt. No. 58-1 at 17. As discussed in detail above, this contention is incorrect. It will be for a jury to determine whether Plaintiff was terminated for just cause. CMH

also contends that "[t]o the extent that Plaintiff hopes to present evidence at trial concerning the clinical care issues that led to the termination of Plaintiff's employment with the Hospital . . . such claims are barred by the doctrine of primary jurisdiction." *Id.* at 18. CMH cites the case of *Williams v. Woodhull Med. and Mental Health Ctr.*, 891 F. Supp. 2d 301 (E.D.N.Y. 2012), for the proposition that "a federal district court must refrain from hearing a damages claim by a physician where the legitimacy of the termination of the physician's privileges is dispositive, and the claim has not first been filed before the [Public Health Council]." *Id.* at 324 (citations omitted). This is another argument that was raised by CMH for the first time in its motion for reconsideration and should have been raised previously. The argument is also meritless, since it ignores the fact that the question of whether the termination of Plaintiff's *employment*, not his *privileges*, is dispositive. Accordingly, Defendant CMH's motion for reconsideration is denied.

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Plaintiff's motion for reconsideration (Dkt. No. 57) is **DENIED**; and the Court further

**ORDERS** that Defendant's motion for reconsideration (Dkt. No. 58) is **DENIED**; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Date: June 19, 2014
      Albany, New York

*/s/ Mae A. D'Agostino*
Mae A. D'Agostino
U.S. District Judge